## UNITED STATES

v.

**Specialist Four Robert A. HARVEY, 254–92–8603, U. S. Army, Company C, 3d Battalion, 187th Infantry, 101st Airborne Division (Air Assault), Fort Campbell, Kentucky 42223.**

**CM 434130.**

U. S. Army Court of Military Review.

Sentence Adjudged 31 Oct. 1975.

Decided 29 April 1976.

Appellate Counsel for the Accused: CPT Michael B. Dinning, JAGC; CPT John C. Carr, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Russell S. Estey, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

FELDER, Judge:

Pursuant to his plea of guilty at a general court-martial, a military judge convicted the appellant of larceny and housebreaking in violation of Articles 121 and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 930. He was sentenced to a bad-conduct discharge, confinement at hard labor for sixteen months, forfeiture of all pay and allowances and reduction to the grade of Private E–1. The convening authority approved the sentence but suspended the service of confinement in excess of 45 days for a period of one year.

The appellant now contends that his plea of guilty to the larceny was improvident because he was advised that the maximum punishment for the offense included a dishonorable discharge and confinement at hard labor for five years, when in fact it was a bad-conduct discharge and six months confinement. He asserts that the value of a stolen money order was its intrinsic value as a mere piece of paper and not its face value as alleged.

During the providency inquiry, the appellant informed the military judge that he and another soldier entered the barracks room of a noncommissioned officer and stole two money orders. They were drawn by the Travelers Express Company, Inc., Minneapolis, Minnesota, on the First Northwestern National Bank of Faribault, Minnesota.[1] The one retained by the appellant was made payable to a named person in the amount of $115.00. The money order was not signed on its face by the purchaser as agent of the drawer. The following notation appears on the reverse of the money order:

*"NOTICE*

DO NOT CASH OR TAKE FROM STRANGERS. THIS IS NOT A PRE-SIGNED DRAFT OR A TRAVELERS CHEQUE. TRAVELERS EXPRESS COMPANY, INC. authorizes only its Purchaser to sign this money order on its behalf as drawer, and only for the amount paid to it and originally imprinted, and IS NOT LIABLE if this money order, by reason of theft or otherwise, is not so signed or if raised or altered."

The appellant subsequently affixed his signature and address on the face of the instrument as purchaser and the payee's signature on the reverse as endorser. The money order was sent to his grandmother, who exchanged it for cash.

To determine the correct maximum punishment for the larceny charge, we must establish the value of the money order at the time of the theft. Negotiable instruments placed in circulation may be considered to have the value which they represent. Paragraph 200a(7), Manual for Courts-Martial, United States, 1969 (Revised edition). The value of stolen checks that have been properly drawn and placed in circulation is their face value. *United States v. Buckhorn*, 15 U.S.C.M.A. 556, 36 C.M.R. 54 (1965); *United States v. Windham*, 15 U.S.C.M.A. 523, 36 C.M.R. 21 (1965). However, blank checks are not negotiable instruments because they lack the signature of the drawer, the name of the payee and the amount to be paid. Although they may be the subject of larceny, their value is nominal. *United States v. Frost*, 22 U.S.C.M.A. 233, 46 C.M.R. 233 (1973).

The appellant argues that because the purchaser's signature was not on the money order as agent of the drawer at the time it was stolen, it was not negotiable and, therefore, not worth its face value. He relies upon the decision in *Frost, supra,* and the Uniform Commercial Code § 3–104(1), which states that any writing to be a negotiable instrument must be signed by the maker or drawer.

We conclude otherwise. First, the facts in *Frost*, involving the larceny of a blank United States Treasury check, are markedly distinguishable from the facts in the instant case. Secondly, the negotiability of the instrument is not controlling. It is its issuance into circulation or the stamp of officiality which operates to increase the value from a nominal amount to its face value. *United States v. Stewart*, 1 M.J. 750 (A.F.C.M.R. 5 December 1975). Thus, because the money order was initialed by the issuing clerk on behalf of the drawer, a

---

1. The money order was neither introduced into evidence nor attached to the record as an appellate exhibit. A copy thereof, which was obtained from the drawee bank, is included in the Article 32 investigating officer's report. To determine the providency of the plea, we restrict our examination of the allied documents to a commercial instrument, which on its face, might negate the facts asserted by the appellant in support of his guilt. *See United States v. Johnson*, 49 C.M.R. 467 (A.C.M.R.1974), *affirmed on other grounds*, 23 U.S.C.M.A. 416, 50 C.M.R. 320, 1 M.J. 36 (1975).

fee was charged for its preparation, a control number and the amount payable imprinted thereon, the payee's name inserted and it was issued to the purchaser in exchange for $115.00, that amount was its value. It was complete and ready for use at the time of the theft, despite the absence of the purchaser's signature.

Therefore, we are of the opinion and so decide that the appellant's plea of guilty was provident.

The findings of guilty and the sentence are affirmed.

Senior Judge JONES and Judge O'DONNELL concur.